UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

DOROTHY ANN JONES,                              Case No. DK 09-09415
                                                Chapter 7
                    Debtor.                     Hon. Scott W. Dales
_____/


In re:

STEVEN M. SCHAFER,                              Case No. DK 09-03268
                                                Chapter 7
                    Debtor.                     Hon. Scott W. Dales
_____/


**OPINION AND ORDER REGARDING
CONSTITUTIONALITY OF EXEMPTION STATUTE**

PRESENT:    HONORABLE SCOTT W. DALES
            United States Bankruptcy Judge


I.        INTRODUCTION AND JURISDICTION

In separate cases, Chapter 7 debtors Dorothy Ann Jones and Steven M. Schafer (the "Debtors") each claimed exemptions pursuant to 11 U.S.C. § 522(b)(3) and M.C.L. § 600.5451 on Schedule C.  Their respective bankruptcy trustees (the "Trustees") each filed independent objections to the claimed exemptions,[1] arguing that M.C.L. § 600.5451 violates the United States Constitution's Bankruptcy Clause[2] and Supremacy Clause[3] by providing exemptions only to those debtors who have sought protection under the United States Bankruptcy Code.[4]

---

[1] The court has consolidated the objections for purposes of argument and decision.
[2] U.S. Const. Art. 1, § 8.
[3] U.S. Const. Art 6, cl. 2.
[4] As required by Fed. R. Bankr. P. 9005.1 and 28 U.S.C. § 2403, the Trustees gave notice of their constitutional challenge to the Michigan Attorney General.  He did not respond in either case.

The Honorable James D. Gregg and the Honorable Jeffrey R. Hughes, both from this district, have already invalidated the statute on these same grounds. *See In re Pontius*, 421 B.R. 814 (Bankr. W.D. Mich. 2009) (Gregg, J.); *In re Wallace*, 347 B.R. 626 (Bankr. W.D. Mich. 2006) (Hughes, J.). In a bench ruling last October, however, this court upheld the constitutionality of M.C.L. § 600.5451 after analyzing the statute under the Supremacy Clause rather than the Bankruptcy Clause. *See* Transcript of Hearing Held Oct. 14, 2009 in *In re Bratsburg*, Case No. 09-06721 (Bankr. W.D. Mich. Oct. 14, 2009).

The court has jurisdiction to decide these contested matters under 28 U.S.C. § 1334. Each proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2)(B), within the District Court's automatic referral under 28 U.S.C. § 157(a) and L. Civ. R. 83.2(a).

Each Trustee, as the objecting party, "has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c). In addition, the court must indulge every presumption that the State's enactment comports with the United States Constitution. *Pontius*, 421 B.R. at 820; *Wallace*, 347 B.R. at 634.

Despite the weighty arguments advanced by the Trustees' counsel in writing and at oral argument on March 11, 2010 in Kalamazoo, Michigan, and notwithstanding the thoughtful analysis articulated in the opinions published by Judges Gregg and Hughes, this court adheres to its bench ruling in *Bratsburg* and finds M.C.L. § 600.5451 to be constitutional. For the reasons that follow, the court finds the Trustees have failed to show the Debtors' bankruptcy-specific exemptions "are not properly claimed."

## II.   FACTUAL BACKGROUND

In 11 U.S.C. § 522(b), Congress provided that a state may choose the exemption scheme available to any debtor filing for bankruptcy relief within its borders. For example, debtors filing

bankruptcy petitions in Ohio and Tennessee are not eligible to claim the federal exemptions enumerated in § 522(d) because the state law applicable to those debtors specifically "does not so authorize." *See* 11 U.S.C. § 522(b)(2); Ohio R.C. § 2329.662; T.C.A. § 26-2-112.  In other words, those states and many others have "opted out" of the federal exemption scheme.

Michigan, on the other hand, has not opted out.  When Michigan debtors file bankruptcy petitions they can choose to exempt property under the federal exemption scheme found in 11 U.S.C. § 522(b)(2) and (d), or under the state exemption scheme of 11 U.S.C. § 522(b)(3). Should Michigan debtors choose the so-called "state exemptions," they then have a choice to select exemptions under M.C.L. § 600.6023, which are generally applicable to all judgment debtors, or exemptions under M.C.L. § 600.5451, which are available only to debtors in bankruptcy.

Dorothy Ann Jones filed a voluntary petition under Chapter 7 on August 7, 2009, and elected the state exemptions under M.C.L. § 600.5451, claiming $30,000.00 in value attributable to a long-term real estate leasehold in Grand Junction, Michigan. *See* M.C.L. § 600.5451(1)(n). Steven Schafer commenced his Chapter 7 bankruptcy case on March 23, 2009, and also elected the state exemptions under M.C.L. § 600.5451(1)(n), claiming $44,695.00 in value attributable to his interest in his residence in Marshall, Michigan.

At oral argument, the Debtors' attorneys explained that their clients claimed exemptions under M.C.L. § 600.5451 because that statute provides a much more generous homestead allowance than any alternative.  Because both Debtors are either older than sixty-five years of age or disabled, they may claim up to $51,650.00 in homestead value under M.C.L. § 600.5451(1)(n).  Had they taken exemptions under M.C.L. § 600.6023(1)(h), they could claim

only $3,500.00 in their homestead. Likewise, the federal exemption available to these Debtors on account of their residential real estate is capped at $20,200.00.

### III.    THE STATUTE UNDER REVIEW: M.C.L. § 600.5451

Section 522(b)(3)(A) authorizes debtors to exempt "any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located . . ." Although M.C.L. § 600.5451(1)(n) qualifies as a State law applicable on the Debtors' respective petition dates, it is not generally applicable to all debtors, but only debtors who file for bankruptcy protection:

> (1) A debtor in bankruptcy under the bankruptcy code, 11 USC 101 to 1330, may exempt from property of the estate property that is exempt under federal law or, under 11 USC 522(b)(2)[5] [sic], the following property:
>
> . . .
>
> (n) The interest of the debtor . . . not to exceed $30,000.00 in value or, if the debtor or a dependent of the debtor at the time of the filing of the bankruptcy petition is 65 years of age or older or disabled, not to exceed $45,000.00 in value, in a homestead.

M.C.L. § 600.5451(1)(n).[6]

The Trustees contend, and the *Wallace* and *Pontius* courts agree, that the Michigan legislature exceeded its authority in enacting M.C.L. § 600.5451 because the statute applies only to debtors in bankruptcy.   The argument depends upon the premise that the United States Constitution, specifically the Bankruptcy Clause, divested the states of legislative authority to enact bankruptcy laws, reserving that power exclusively for Congress.   Because Congress cannot

---

[5] This reference should have been "§ 522(b)(3)."

[6] The state statutory exemption amounts have been adjusted upward in accordance with the Consumer Price Index and the statute's indexing feature.

Page 5 of 17

delegate its own legislative authority back to the states, Michigan's enactment of its own bankruptcy-specific exemption is not an exercise of its own legislative authority, but instead an exercise of a Congressional prerogative, and therefore violates the United States Constitution.

In view of these arguments, the first step in determining the constitutionality of this statute is to examine whether, under our republican form of government, Michigan's legislature retains concurrent authority in the area of bankruptcy exemptions, notwithstanding the Bankruptcy Clause and Congress's enactment of the Bankruptcy Code.  If Michigan retains such authority, the question becomes whether its bankruptcy-specific exemption statute conflicts with federal law, and must yield under the Supremacy Clause.

A.  Concurrent v. Exclusive Legislative Authority

To support the view that Michigan lacks authority to enact a bankruptcy-specific exemption, the Trustees rely heavily on the decisions in *Wallace* and *Pontius*, which in turn rely on *Hood v. Tennessee Student Assistance Corp.*, 319 F.3d 755 (6th Cir. 2003), *aff'd on other grounds*, 541 U.S. 440 (2004).

The *Wallace* and *Pontius* opinions construed the Bankruptcy Clause, and its uniformity requirement, as an express delegation of exclusive legislative power from the states to the federal legislature -- a constitutional delegation divesting the states of their own legislative authority in this area.  This view, however, is at odds with the Sixth Circuit's earlier analysis in *Rhodes v. Stewart*, 705 F.2d 159 (6th Cir.), *cert. denied,* 464 U.S. 983 (1983), which recognized concurrent state legislative authority to adopt exemptions applicable in bankruptcy.  Neither *Hood* nor *Rhodes*, however, considered whether a state, consistent with the United States Constitution, may enact exemptions that apply *only* in cases under Title 11.

In *Rhodes*, the Sixth Circuit reversed a bankruptcy court decision that invalidated the statute pursuant to which Tennessee "opted out" of the federal bankruptcy exemptions. Thirteen years later, the Sixth Circuit in *In re Storer*, 58 F.3d 1125 (6th Cir. 1995), cited *Rhodes* approvingly when an Ohio debtor sought to exempt property under 11 U.S.C. § 522(d), despite his state's decision to opt-out of the federal exemption scheme. Even though *Rhodes* and *Storer* were not considering exemptions that apply only in bankruptcy cases, the court's rationale expressed a broad view of concurrent state and federal legislative authority in the area of bankruptcy exemption legislation:

> It is fundamental that the state and federal legislatures share concurrent authority to promulgate bankruptcy laws, *Sturges v. Crowninshield,* 17 U.S. (4 Wheat) 119, 4 L.Ed. 529 (1819), and that the Supremacy Clause and the doctrine of preemption will serve to invalidate state promulgations to the extent they are inconsistent with or contrary to federal laws. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). It is equally axiomatic, that Congress has not preempted state legislation that it has expressly and concurrently authorized, such as the opt-out. In such instance, rather than preempting the area, Congress expressly authorizes the states to "preempt" the federal legislation.

*Rhodes*, 705 F.2d at 163; *Storer*, 58 F.3d at 1128-29. Indeed, the Sixth Circuit specifically noted that 11 U.S.C. § 522(b)(1) is "not an unconstitutional delegation of federal power, but rather is merely a recognition of the concurrent legislative power of the state legislatures to enact laws governing bankruptcy exemptions." *Storer*, 58 F.3d at 1129 (*citing Rhodes*, 702 F.2d at 163).

The court in *Hood*, on the other hand, endeavored to resolve a separate question of Congressional power to abrogate state sovereign immunity under 11 U.S.C. § 106, not the constitutional concerns associated with state-created bankruptcy exemptions under 11 U.S.C. § 522. In fact, the Supreme Court affirmed the *Hood* decision for reasons other than those the

Sixth Circuit expressed regarding the Bankruptcy Clause. In addition, the discussion in *Hood* strongly suggests a different understanding of concurrent state legislative authority in the bankruptcy area than the holding in *Rhodes*.

The court in *Hood* interpreted the phrase "uniform laws" as giving Congress the *exclusive* power to enact laws regarding bankruptcy. Criticizing the Supreme Court's decision in *Sturges v. Crowninshield*, 17 U.S. 119 (1819), as an aberration borne of administrative necessity and inconsistent with the framer's original intent, the *Hood* court reached back to Alexander Hamilton's arguments in The Federalist No. 32 to make the point. Contrary to Chief Justice Marshall's conclusion in *Crowninshield*, the *Hood* panel concluded that the Bankruptcy Clause divested the states of all authority in the bankruptcy realm.

Curiously, however, Hamilton's comments in the concluding paragraphs of The Federalist No. 32 support the contrary view that state legislatures retain *concurrent* authority in the bankruptcy area:

> The necessity of a concurrent jurisdiction in certain cases results from the division of the sovereign power; and the rule that all authorities, of which the States are not explicitly divested in favor of the Union, remain with them in full vigor, is not a theoretical consequence of that division, but is clearly admitted by the whole tenor of the instrument which contains the articles of the proposed Constitution. We there find that, notwithstanding the affirmative grants of general authorities, there has been the most pointed care in those cases where it was deemed improper that the like authorities should reside in the States, to insert negative clauses prohibiting the exercise of them by the States . . . This circumstance is a clear indication of the sense of the convention, and furnishes a rule of interpretation out of the body of the act . . .

The Federalist No. 32 (Hamilton). Further, in The Federalist No. 32, Hamilton hypothesized only three cases in which the United States Constitution divested individual states of their preexisting legislative authority. In Hamilton's first category, the Constitution expressly grants "an

exclusive authority to the Union." In his second category, the Constitution "grants authority to the Union in one instance, but in another prohibits the States from exercising the like authority." And in the third category, the Constitution grants "authority to the Union to which a similar authority in the States would be absolutely and totally CONTRADICTORY and REPUGNANT." *Id.* In the same essay, when speaking of the Naturalization Clause, Hamilton theorized that even though the Constitution declares that Congress shall have power "to establish an UNIFORM RULE of naturalization throughout the United States," naturalization did not fall within Hamilton's first category of "express" preemption, but instead in his third category. He reasoned that "if each State had power to prescribe a DISTINCT RULE, there could not be a UNIFORM RULE." *Id.*

Although Hamilton noted, on the subject of naturalization, that there is no room for state legislative authority, he also did not base his conclusion upon the inclusion of the word "uniform" in the Constitution's text. Instead, he found that complete preemption of state authority was necessary given the inherent nature of naturalization. In other words, Hamilton classified naturalization as an area of law in which the framers did not expressly divest state authority, but in which state authority "would be absolutely and totally contradictory and repugnant." *Id.* Hamilton explained:

> I use these terms [contradictory and repugnant] to distinguish this last case from another which might appear to resemble it, but which would, in fact, be essentially different; I mean where the exercise of a concurrent jurisdiction might be productive of occasional interferences in the policy of any branch of administration, but would not imply any direct contradiction or repugnancy in point of constitutional authority.

The Federalist No. 32 (Hamilton). Thus, for Hamilton it was the nature of the subject itself that divested the states of legislative authority in the area of naturalization. Nevertheless, the panel in

*Hood* seized on the fact that the Naturalization Clause and the Bankruptcy Clause both use the word "uniform" to conclude that the Bankruptcy Clause divests the states of sovereign power over bankruptcy matters, just as the Naturalization Clause does with respect to naturalization. Hamilton's discussion of the Naturalization Clause, however, suggests that the Supremacy Clause and implied preemption are the agents through which the framers intended to secure federal uniformity against state interference, not the use of the term "uniform."

Bankruptcy, in any event, is quite different from naturalization.  Indeed, James Madison, recognized that "[t]he power of establishing uniform laws of bankruptcy is so intimately connected with the regulation of commerce," as to make enactment of the Bankruptcy Clause uncontroversial.  *See* The Federalist No. 42 (Madison). But, the power of the states to concurrently regulate commerce, subject of course to the Supremacy Clause and the doctrine of preemption, is so well-settled that we take it for granted today:  under well-established precedent, *state* law defines property rights and generally supplies the rule of decision in bankruptcy proceedings.  *See United States v. Butner*, 440 U.S. 48, 54 (1979) (Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law); *Nobelman v. American Savings Bank*, 508 U.S. 324, 329 (1993) ("Congress has left the determination of property rights in the assets of a bankrupt's estate to state law, since such property interests are created and defined by state law."); *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 700 (6th Cir. 1999) ("It is well-settled that a debtor's property rights are created and defined by state law."); *Strong v. Page (In re Page)*, 239 B.R. 755, 763 (Bankr. W. D. Mich. 1999) ("To determine whether the Debtor's interest . . . is property of the estate, state law must be examined").

The peaceful coexistence of state commercial regulation under *Butner* and similar authorities, though "productive of occasional interferences" in Hamilton's words, suggests that

concurrent state authority to regulate matters affecting bankruptcy proceedings is not universally "contradictory and repugnant," and therefore not impliedly preempted by the Bankruptcy Clause. *See* The Federalist No. 32 (Hamilton).

In the *Crowninshield* opinion upon which the Sixth Circuit relied in *Rhodes*, Chief Justice Marshall attempted to draw a distinction between state "insolvency laws" on the one hand, and state "bankruptcy laws" on the other, noting that it is difficult to distinguish between the two. *See Crowninshield*, 17 U.S. at 194-96. Given this difficulty, he observed that "[i]t may be thought more convenient, that much of [the subject of bankruptcy and insolvency] should be regulated by state legislation, and congress may purposely omit to provide for many cases to which their power extends." *Id.* at 195. Specifically on the question of whether the mere existence of the Bankruptcy Clause divests the states of legislative authority, Chief Justice Marshall opined:

> It does not appear to be a violent construction of the constitution, and is certainly a convenient one, to consider the power of the states as *existing over such cases as the laws of the Union may not reach*. But be this as it may, the power granted to congress may be exercised or declined, as the wisdom of that body shall decide. If, in the opinion of congress, uniform laws concerning bankruptcies ought not to be established*, it does not follow, that partial laws may not exist*, or that state legislation on the subject must cease. It is not the mere existence of the power, but its exercise, which is incompatible with the exercise of the same power by the states.

*Crowninshield*, 17 U.S. at 195-96 (emphasis added). The italicized portions of the Chief Justice's opinion, which recognize that Congress may not fully occupy the bankruptcy field and that state legislation must yield only to the extent it conflicts with federal legislation, supports the conclusion that the Bankruptcy Clause and, for that matter the Bankruptcy Code, do not *ipso facto* preclude state legislation in the area. Rather, the court must inquire whether Congress's

enactment of the Bankruptcy Code makes Michigan's enactment of M.C.L. § 600.5451 "incompatible." *Crowninshield*, 17 U.S. at 196.   The Chief Justice's analytical framework strongly counsels in favor of an analysis under the Supremacy Clause and implied preemption.

By permitting the states to prescribe exemptions applicable in bankruptcy proceedings, and permitting them to opt-out of the federal bankruptcy exemptions, Congress "purposely omit[ted] to provide" a federal rule of decision, and constitutionally deferred to the states on these issues. *Id.* at 195.   Indeed, in *Hanover National Bank v. Moyses*, 186 U.S. 181 (1902), the United States Supreme Court specifically upheld the decision of Congress to adopt state exemption laws as the rule of decision in bankruptcy cases under the former Bankruptcy Act, and rejected the challenge that doing so somehow constituted an improper delegation of authority. By accepting Congress's invitation to regulate exemptions, the states are exercising their own legislative authority, authority that they retained notwithstanding the Bankruptcy Clause.

Having considered both *Hood* and *Rhodes*, this court concludes that *Rhodes* controls the outcome of the Trustees' objections, for at least two reasons.   First, the Sixth Circuit in *Rhodes* clearly articulated a view of state authority as concurrent with federal authority, a view that comports with the over-arching design of our Constitution as expressed by the founders in The Federalist Papers, and by Chief Justice Marshall in *Crowninshield*.[7]   This view is more respectful of state sovereignty than the view expressed in *Hood*, and is more consistent with the tenor of the Constitution.   Second, under Sixth Circuit Rule 206(c), reported panel opinions, such as the opinion in *Rhodes*, are binding on subsequent panels, and remain controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or

---

[7] Moreover, the discussion of state legislative authority in *Rhodes*, though arguably premised on dicta in *Sturges v. Crowninshield*, 17 U.S. (4 Wheat) 119 (1819), was necessary to the Sixth Circuit's decision on the exemption question.

the Sixth Circuit sitting *en banc* overrules the prior decision.  *See* 6th Cir. R. 206(c); *In re Young*, 872 F.2d 176, 177 (6th Cir. 1989).

Consequently, because of binding precedent, constitutional concerns, and a healthy respect for state sovereignty, this court finds that the occasional collisions between state commercial regulation and federal bankruptcy law are more appropriately addressed under the Supremacy Clause as expressed in *Rhodes*, rather than the Bankruptcy Clause as interpreted in *Hood*.  *See Butner*, 440 U.S. at 54, n.9.

However, that Michigan has concurrent authority to enact M.C.L. § 600.5451 would not be sufficient reason to uphold the statute.  It must also pass muster under the Supremacy Clause.

### B.  Supremacy and Preemption

The Supremacy Clause provides that the "Constitution and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. Art. 6, cl. 2.  The Supremacy Clause and the doctrine of preemption operate to invalidate state statutes to the extent they are inconsistent with, or contrary to, the objectives of federal law. *Perez v. Campbell*, 402 U.S. 637, 652 (1971) ("[A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.").

In *Stellwagen v. Clum*, 245 U.S. 605, 613 (1918), the Supreme Court made clear that state laws are to be suspended "only to the extent of actual conflict with the system provided" by federal bankruptcy legislation, while state laws "which are in aid of the Bankruptcy Act can stand."  *Id.* at 615-16.  "The relevant question in preemption analysis is whether the state law 'trespasses' on federal turf."  Kenneth N. Klee, Bankruptcy and the Supreme Court, 171, (Lexis-

Nexis 2008). Therefore, M.C.L. § 600.5451 must actually conflict with the Bankruptcy Code in order to offend the Supremacy Clause. To actually conflict, "the state law must in effect, obstruct the basic objectives of the federal law." *In re Vasko*, 6 B.R. 317, 323 (Bankr. N.D. Ohio 1980) (upholding bankruptcy-specific state exemption).

The Bankruptcy Code not only authorizes states to opt out of the federal exemption scheme, but also, at the debtor's election, expressly adopts state law as the rule of decision with respect to exemptions, provided the state law is applicable on the date the debtor files his or her bankruptcy petition. *See* 11 U.S.C. § 522(b)(2) (the "opt out"); *id.* § 522(b)(3)(A) (debtor's election). Because § 522 specifically permits states to opt out, several courts have concluded that there can be no conflict when the state exemptions differ from the federal bankruptcy laws. *Storer*, 58 F.3d at 1128-29; *Rhodes*, 705 F.2d at 163; *see also Sheehan v. Peveich*, 574 F.3d 248, 252 (4th Cir. 2009) (citing *Rhodes* and stating that § 522(b) is an express delegation to give the states the unrestricted authority to create exemptions); *In re Brown*, No. 06-30199, 2007 WL 2120380 (Bankr. N.D.N.Y. July 23, 2007) (states that have opted out are not required to provide exemptions comparable, concomitant, or corresponding to the federal exemptions), *aff'd on opinion below*, No. 07-CV-0856, 2007 WL 4560671 (N.D.N.Y. Dec. 18, 2007). Thus, "to say that state exemption provisions providing less solace to debtors than the federal exemptions of section 522(d) are in 'conflict' with either the language of the Code or expressions of Congressional intent underlying it is simply inaccurate." *Rhodes*, 705 F.2d at 163. The same principle applies to state exemption statutes providing greater debtor protection, such as M.C.L. § 600.5451.

Of course, what distinguishes M.C.L. § 600.5451 from generally applicable exemption laws is that the former applies only in cases under the Bankruptcy Code. The question then

becomes whether, under the Supremacy Clause, the bankruptcy-specific nature of the exemption law itself dooms its constitutional validity.

The *Pontius* court suggests that because Michigan's bankruptcy-specific exemptions are more generous in key respects than Michigan's generally applicable exemptions, they might interfere with federal policy by discouraging creditors from filing involuntary bankruptcy petitions. *Pontius*, 421 B.R. at 823 ("Bankruptcy specific exemptions might be an extreme disincentive which would effectively hinder creditors' rights"). That M.C.L. § 600.5451 may discourage creditors from filing involuntary bankruptcy petitions is plausible, but *any* disparity between "state exemptions" and federal exemptions would create an incentive or disincentive for either creditors or debtors to seek relief under the Bankruptcy Code. This possibility is inherent in any legislative scheme, such as 11 U.S.C. § 522(b), that envisions a role for the states to play in enacting alternative exemptions, whether generally applicable or bankruptcy-specific.

For example, because Michigan's generally applicable homestead exemption is currently limited to $3,500.00 under M.C.L. § 600.6023, creditors of an unmarried debtor with substantial equity in her home would presumably prefer to pursue their state remedies to prevent the debtor from claiming the more liberal homestead allowance under 11 U.S.C. § 522(d)(1). The same debtor, however, might have an incentive to file for bankruptcy relief precisely in order to claim the more generous federal homestead exemption. Though it creates incentives and disincentives for bankruptcy filings, this disparity between the generally applicable state exemption and the federal homestead exemption does not doom either the state or federal alternative under the Constitution. Albeit in *dicta*, the Supreme Court acknowledged the hegemony of state law in determining exemptions:

> If a State opts out, then its debtors are limited to the exemptions provided by state law. Nothing in subsection

> (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all.

*Owen v. Owen*, 500 U.S. 305, 308 (1991).  Similarly, the Sixth Circuit in *Rhodes* and *Storer* observed that "the states are empowered to create whatever exemptions they elect, even if they are less inclusive (or more restrictive) than the exemptions afforded debtors by the federal exemption scheme."  *Storer*, 58 F.3d at 1128 (*citing Rhodes*).  These different exemption schemes will create incentives for one party or another in every case. If the disparity disrupts federal policy, Congress is free to take corrective action.[8] The fact that the State's exemption laws may encourage or discourage bankruptcy filings is not, standing alone, sufficient to persuade the court to invalidate Michigan's bankruptcy-specific exemption statute.

For example, if Michigan's legislature had enacted a statute that required debtors in bankruptcy to claim exemptions prescribed in 11 U.S.C. § 522(d), the statute would be bankruptcy-specific.  Yet by prescribing precisely the same exemptions as contemplated under 11 U.S.C. § 522(d), the statute would not interfere with federal objectives. It is difficult to imagine a *bona fide* constitutional challenge to such a law, applicable only in bankruptcy but patently in harmony with federal law.  In other words, it is the effect of the statute, rather than its bankruptcy-specific nature, that could potentially make it inconsistent with federal law. Certainly, the court should hesitate before striking down a state law that does not interfere with federal policy, simply because the state law applies only in bankruptcy cases.  The differences in the two exemption schemes, and not the bankruptcy-specific nature of the state exemptions, may create disincentives for one constituent of the Bankruptcy Code or another.  Yet, after the

---

[8]For example, in 2005, under the Bankruptcy Abuse Prevention and Consumer Protection Act, Congress changed the domicile requirements for exemption purposes to curb the "mansion loophole" which arguably permitted debtors to move to a different state (such as Florida or Texas) to claim more generous homestead exemptions.  This shows that if Congress perceives a problem with state exemptions, it can, through legislation, limit the effect of state laws that interfere with federal objectives.  See 11 U.S.C. § 522(q).

Supreme Court's decision in *Hanover National Bank v. Moyses*, 186 U.S. 181 (1902), and the Sixth Circuit's decision in *Rhodes*, among other authorities, this court finds that such differences are not inconsistent with the Constitution.[9]

Through § 522(b)(3), Congress has protected the rights of states to legislate in this area and to prescribe the rule of decision regarding exemptions in much the same way state law defines property to be included within the bankruptcy estate. *See* 11 U.S.C. § 541; *Butner*, 440 U.S. at 54.[10] Given this Congressional concern for state authority, Michigan's bankruptcy-specific exemption is not vulnerable under the Supremacy Clause. *Sheehan*, 574 F.3d at 252 (*citing Rhodes*).

IV.   CONCLUSION AND ORDER

In summary, the court finds that the Bankruptcy Clause does not divest Michigan of authority to regulate bankruptcy exemptions, and in view of Congress's invitation to the states to adopt their own exemptions and opt-out of the federal exemptions, the court does not perceive any unconstitutional conflict between M.C.L. § 600.5451 and federal law.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

---

[9] Additionally, because this court does not regard M.C.L. § 600.5451 as an exercise of federal legislative power by the State of Michigan, and because the court does not believe the uniformity requirement of the Bankruptcy Clause applies to state enactments, the observation in *Hanover* to the effect that a trustee must take in each state what he would take if the bankruptcy law had not been enacted, does not require a different result in this case. *Contra Pontius*, 421 B.R. at 822 (*citing Hanover*, 186 U.S. at 190). The *Hanover* court was considering the constitutionality of the federal Bankruptcy Act, not a specific state law, and simply concluded that if trustees in different states take property subject to state-created exemptions, that fact does not make the Bankruptcy Act non-uniform. The high court was not considering, and therefore its opinion does not resolve, the distinct question of bankruptcy-specific state exemption statutes.

[10] States are not entirely free to define property rights, as Congress has expressed some limits on this authority to prevent interference with bankruptcy policy. *See, e.g.*, 11 U.S.C. §§ 365(e)(1), (f)(1), and 541(c)(1).

(1)     In *In re Steven M. Schafer*, Case No. 09-03268, the trustee's objection to exemptions (DN 34) is OVERRULED;

(2)      In *In re Dorothy Ann Jones*, Case No. 09-09415, the trustee's objection to exemptions (DN 13) is OVERRULED;

(3)     The Clerk shall enter a copy of this Opinion and Order Regarding Constitutionality of Exemptions in the docket of each debtor's case.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order Regarding Constitutionality of Exemptions pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Dorothy Ann Jones, Kerry D. Hettinger, Esq., Steven M. Schafer, Scott P. Zochowski, Esq., Thomas R. Tibble, Thomas C. Richardson, Esq., Nicholas Daly, Esq., and the Office of the United States Trustee.

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: April 22, 2010**